Spear, J.
The ground'for reversal by the circuit court, as stated in the record, is that “The complaint in the proceedings before the mayor is not supported by evidence.”
Considerable space is taken in the brief for plaintiff in error with an argument in support of the proposition that the courts below were without power to review the judgment of the mayor upon the weight of the evidence. But opposing counsel in their brief respond that they do not care to discuss that question, for neither of the courts con. sidered the weight of the evidence, as no case was presented which called on them to do so. In this situation it appears unnecessary to enter upon the inquiry as to the power alluded to, and as its determination is not necessary to a decision of this case, a consideration of it may properly be left until a ease arises in which it is necessary.
We therefore look to the record to see if there is any evidence tending to support each material element of the complaint. Those are: That the defendant, between July 20, 1894, and August 23, 1894, at the village of Bellefontaine, kept a place where intoxicating liquors were sold at retail, other than at the manufactory, and otherwise than on prescription, or for exclusively known mechanical, pharmaceutical or sacramental purposes.
*325 The evidence shows that a refrigerating beer house owned by John "Wagner & Sons, of Sidney, Ohio, and of which defendant had charge, was maintained within the village at the time stated, in which a large number of kegs of beer, each containing four gallons, was kept. Two witnesses were called to testify to alleged sales. One, Harry Roof, testified, among other things, that he had not ordered any beer of Vassaux; that it was a question with him whether he purchased' from the defendant or from Wagner Bros., but that, between the dates named, he received of defendant, at the beer house, ten kegs of beer known as “pony” kegs, one at a time, and paid defendant for each keg as received at the beer house; that he paid ten times, one dollar each time; that this was in the village of Belief ontaine; that he bought the beer to drink; that he did not hold any prescription from any physician for beer; that each keg was marked with the letter “R,” and that the beer was an intoxicating liquor. The beer was hauled either by defendant or by Henry Vassaux, or one Hitqhins, wherever witness directed. From orders he had received witness would judge that Ed. Wagner ran the beer house; that he had seen him there, although he was not always there when witness got beer, nor did he pay Wagner for any of the beer. He ordered beer from Mr. Wagner, i. e., he would write to Mr. Wagner at Sidney, and then “I would receive an order from him for five kegs and showed it to Louis Vassaux at the beer house, and when I wished my beer would say to him I had received an order from Wagner Bros. Then after that I could order beer to the amount of five kegs. I would tell Mr. Vassuax ‘I want a keg of beer on my order.’ ”
*326 Another testified that he had not purchased any beer of Vassaux; that during the time named he received three four-gallon or “pony” kegs of beer of Vassaux,which were delivered at his house, one keg at a time, for which he paid the driver— Hitchins — on delivery one dollar each. Witness testified otherwise generally as the former witness, except that two kegs ordered by him had not been paid for or delivered to him. ‘ ‘The}'- will be paid for,” said the witness “when I receive them.”
The orders described by Roof were addressed to JohnWagner’s Sons, Sidney Ohio, and requested them to sell the writer five kegs beer at usual wholesale prices, and “ship same to me, care of your storekeeper, to be stored bjr you in your warehouse here subject to my order.” The response would be in substance a bill for the beer and the advice underneath: “We have shipped the above beer at Sidney to you at Bellefontaine, marked “R,”, care of our storekeeper, to be stored by us for you in our storehouse in Bellefontaine subject to your order.” (Signed) “John Wagner’s Sons.”
The order from the other witness, and response, were of similar form and substance.
All beer so ordered was shipped on a way-bill giving the names of those who had ordered, the number of packages requested, the initial mark on each keg, “with entire lot care of Louis Vassaux.”
The witness Hitchins testified that he was in the employ of the Wagners to drive the wagon and deliver the beer at Bellefontaine They paid him by the month. Vassaux was in charge of the beer house; was the storekeeper. Witness, and Vassaux unloaded the beer at the depot and stored it at *327 the beer house. The kegs were stored in racks, and over each an initial, being a rack for each letter of the alphabet. So that when Roof called and showed his order and asked for a keg of beer, it would be taken from the rack which had the initial of his surname over it, “R. ” Each keg had the initial of the consumer on it, but there would be no means of distinguishing Roof’s keg from any other that had “R” on it. Witness did not collect any money for any beer delivered; but the consumers sometimes deposited with him and he “put it up for Mr. Wagner.” He did not give the money to Vassaux, but put it in his trunk until Wagner came and then gave it to him; and Vassaux put what he received “in the same box.” In the opinion of witness he “simply received that money on deposit for the customers to pay it for them to Wagners’;” but should such money be lost he would be responsible to Wagner; he could, not hold the man from whom he got it. Vassaux had no authority over the beer other than to store and deliver it on the order of the purchaser. But if Mr. Roof or other customer, had appeared at the storehouse having an order, and demanded that beer in his name should be delivered without pay, it would not have been done. If, under like circumstances, the customer had presented the price, the beer would have been delivered at the place desig’nated. Just so much would have been delivered as was paid for.
Edw;ard Wagner, among other things, testified that the business of John Wagner’s Sons was brewing beer, ale and malt, and selling the same; that the place of business was at Sidney, but they owned the storehouse in Bellefontaine which had been described by other witnesses, of which Louis *328 Vassaux was the keeper. Witness had the exclusive control of it. John Wagner’s Sons had a government license to sell beer at retail in Bellefontaine. The method of making the sales and shipments was described, and he added: “We retain no control as .vendors over the beer thus sold and shipped after delivery to the railway station only to secure the money of Mr. Roof and to store it for him according to contract. When I delivered it, it was his beer, and I stored it in Bellefontaine for him as his property according to contract.” As to the authority of Vassaux to collect, he testifies: “Well, we told the customers they could deposit the money with Mr. Vassaux and he could keep the money for me till I came up here. Some of the collecting I did myself.”'
The foregoing embraces the salient points made by the testimony. What does it tend to prove?
It is' contended in support of the judgment of reversal that the evidence conclusively establishes that the propositions to buy were made at Sidney, accepted at Sidney, credit given at Sidney, beer delivered to the carrier at request of purchaser, at Sidney, the beer having been previously set apart and designated by the initial letter of each purchaser’s name; thus the possession, right of possession, control and title passed to the purchasers at Sidney, and hence conclusively, as matter of law, the sales were made at Sidney, and so could not be held to have been made at Bellefontaine; the relations of Wagner’s Sons to the property when at Bellefontaine being only that of bailees, storing it for the purchasers.
The ordinary rule is that title passes where the specific goods are, at the request of the purchaser, delivered to the common carrier, consigned to the *329 purchaser whether the price has been paid or not. So that, the mere fact that the goods were to be subsequently paid for would not of itself prevent the transaction being a completed sale. But it is also true that if the vendor ships the goods to the keeper of his own storehouse, and retains, whether as owner of a storehouse or otherwise, contr.ol of the goods at the terminus for the purpose of exacting pay before actual possession by ■ithe purchaser is permitted, then the fact of delivery to the carrier is not, of itself, delivery to the purchaser. And under such circumstances, the delivery, when it occurred, would be at the terminus, and not at the point of shipment. It is observed by Mr. Benjamin, in his work on Sales, section 399 : ‘ ‘The fact of making the bill of lading deliverable to the order of the vendor, is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve the jms cMsppnencti, and to prevent the property from passing to the vendee. The prima facie conclusion that the vendor reserves the yws disppnendi, when the bill of lading is to his order, may be rebutted by proof that in so doing he acted as agent for the vendee, and did not intend to retain control of the property; and it is for the jury to determine as a question of fact what the real intention was.” So, if the trial court believed the witnesses who testified as to the method of shipment, the form of the way-bill, and the method of storing and conditions of delivery of the beer, and the collection of the purchase price, there was evidence of circumstances, however contradictory, tending to show that the vendors did not intend to part with possession and control of the beer absolutely, but intended to retain control through their agent, Yassaux, until the price should be paid.
*330 Again, the general imle is that, in order to pass title the particular property must be designated. As expressed in Woods v. M’Gee, 7 Ohio, 467: ‘‘Where a part of an undivided lot of p ropertyis sold, and an order given for its delivery, there must be some act of selection under the order before the right of property is changed.” This case was distinguished in Newhall v. Langdon, 39 Ohio St., 87, but the facts of that case are peculiar and the decision does not bear upon the case at bar. It ip held in McClung v. Kelley, 21 Iowa, 508: “A sale is not completed so long as anything remains to be done to the thing sold to put it in condition for sale, or to identify it, or discriminate it from other things, or to determine its quantity if the price depends on this, unless this is to be done by the purchaser.”
So, also, if the trial court believed the testimony of the witness Hitchins with respect to the way the beer ‘was kept in the storehouse (and on this he was uncontradieted) there was evidence tending to show that there had been no special designation of Roof’s beer, for while the letter “R” was on each keg delivered to him, that letter was equally on all kegs intended for other purchasers whose names began with “R,” and, as stated by the witness, they could not distinguish Roof’s beer from any other that might be on the “R” rack.
The evidence was confusing and more or less conflicting. We think, however, there was evidence tending to prove each element of the accusation, and, upon the trial court devolved the duty of getting at the real transaction, the real intent of the parties, for it was this intent which should govern. Whether that was that the owners should part with their property, and the *331 purchaser become the immediate owner on delivery at the railroad station at Sidney, or, on the other hand that control was to remain in the vendors and title pass to the purchaser only after performance of certain conditions at Bellefontaine— which was the controlling question in the case— was to be determined by weighing the evidence. This duty was within the province of the mayor. In performing it he was required to consider, not the orders, responses and bills and declarations of the vendors alone, but all the evidence, and weigh it all in the light -of surrounding circumstances. If, upon the whole case he was of opinion that the sales were in fact completed at Sidney, acquittal would of necessity follow; but, if 'on the other hand, he was of opinion that under the evidence the sales were proven to have been made, at the beer house in Bellefontaine, it was within his province and jurisdiction to so find and declare. If he so found, the fact that Vassaux was an agent would not shield him. Our criminal law does not recognize agencies. The sales, if made at Bellefontaine, were made by the four-gallon keg,and were at retail, as held in Kauffman v. Hillsboro, 45 Ohio St., 700; they were not made, at the manufactory, nor upon any prescription, nor for mechanical or pharmacuetical purposes, but for personal consumption.
With the correctness of the mayor’s finding on the preponderance of the evidence we are not concerned. It is. enough that there was evidence tending to sustain each element of the complaint, and that the mayor had jurisdiction to weigh the evidence, and find as his judgment should dictate.

Judgment of the circuit court reversed and that of the common pleas and mayor affirmed.